IN THE UNITED STATES DISTRICT COURT

OF THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| v. | § | No. 6:12cv22 |
| | | LEAD CASE |
| ALCATEL-LUCENT USA, INC. , AND AT&T MOBILITY LLC, ET AL. | § | |

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| v. | § | No. 6:12cv369 |
| | | LEAD CASE |
| T-MOBILE USA, INC., ET AL | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced lead cases were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Before the Court is the following pending motion:

> **Plaintiff's Motion for Partial Summary Judgment that Pursuant to 35 U.S.C. § 103(c), United States Patent No. 7,072,315 is Not Prior Art to United States Patent No. 6,870,808 (Docket Entry #s 270, 171).**

The Court, having reviewed the relevant briefing and hearing arguments of counsel in consolidated case 6:12cv22 June 2, 2015, recommends the motion be **DENIED**.

1

## I. BACKGROUND

Plaintiff Adaptix, Inc. ("Adaptix") accuses Defendants of infringing the three patents remaining in the above cases ( the '172, '283, and '808 patents). In response, as one of their defenses and/or counterclaims, Defendants argue the Asserted Patents are invalid as anticipated or rendered obvious in light of the prior art identified by Defendants. Of relevance here, Defendants allege United States Patent No. 7,072,315 ("the '315 patent") is prior art to the '808 patent-in-suit. Adaptix moves for partial summary judgment, asserting the '315 patent is not prior art to the '808 patent under 35 U.S.C. §103(c).

## II. STANDARDS

The Court uses familiar standards to resolve Adaptix's motion for partial summary judgment. Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Defendants, as the movants, bear the initial burden to demonstrate the absence of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 332 (1986). If Defendants meet that burden, Adaptix must point to admissible evidence demonstrating there is a genuine issue for trial. FED. R. CIV. P. 56(e). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

## III. DISCUSSION

**A.     35 U.S.C. § 103(c)**

Adaptix has moved for summary judgment that the '808 patent cannot be found obvious under 35 U.S.C. §103(c) in light of the '315 patent.[1]  According to Adaptix, the only provision of the patent statute under which the '315 patent may possibly qualify as prior art is 35 U.S.C. § 102(e). The reach of this provision is limited by 35 U.S.C. § 103(c)(1), which provides as follows:

> Subject matter developed by another person, which qualifies as prior art only under one or more of subsections (e), (f), and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the claimed invention was made, owned by the same person or subject to an obligation of assignment to the same person.

35 U.S.C. § 103(c).

The ownership or obligation to assign must have existed at the time the invention was made. *Id.*  For purposes of 35 U.S.C. § 103(c), a "person" may be a corporation. *See*, *e.g.*, *Netgear, Inc. v. Ruckus Wireless, Inc.*, 5 F. Supp.3d 592 (D. Del. 2013).

**B.     The parties' positions**

Adaptix does not argue the same person "owned" the '315 and '808 patents.  It argues the patents were "subject to an obligation of assignment to the same person." According to Adaptix, at the time the inventions claimed in the '315 and '808 patents were made, the inventors named on those patents were under an obligation to assign their patent rights to Broadstorm Telecommunications, Inc. ("Broadstorm"), and did in fact assign those patent rights to Broadstorm. Therefore, Adaptix argues the '315 patent does not qualify as prior art per 35 U.S.C. § 103(c).

---

[1] Although Adaptix believes the '315 patent does not qualify as prior art under 35 U.S.C. § 102(e), Adaptix bases its motion solely upon § 103(c).

In support, Adaptix states as follows. The '315 patent application was filed on October 10, 2000, naming Hui Liu, Xiaodong Li, and Fuqi Mu as inventors. The '808 patent application was filed on October 18, 2000, naming Hui Liu, Hujun Yin, Xiaodong Li, and Fuqi Mu as inventors. The '808 patent issued on March 22, 2005. In June of 2006, Liu, Li, and Mu co-founded Broadstorm. (Liu Decl., ¶2). The '315 patent issued on July 4, 2006.

Relying on a declaration from Dr. Liu, one of the named inventors of both patents, Adaptix asserts (1) all employees of Broadstorm were obligated to assign to Broadstorm any and all of their inventions and patent rights arising out of their employment (Liu Decl., ¶3); (2) Hui Liu, Hujun Yin, Xiaodong Li, and Fuqi Mu were all employees of Broadstorm in and before October 2000 (Liu Decl., ¶4); and (3) Hui Liu, Xiaodong Li, and Fuqi Mu had an obligation to, and did, assign their rights under the '315 patent to Broadstorm. (Liu Dec. ¶¶3-5). Adaptix also cites assignment documents filed with the U.S. Patent and Trademark Office, which establish the '315 and '808 patents were later assigned to Broadstorm.[2]

In response, Defendants assert Adaptix has not provided any evidence (other than inadmissible hearsay) that any inventor had an obligation to assign the inventions to Broadstorm at the time of the purported invention. According to Defendants, Adaptix has not relied on any employment agreement between Broadstorm and its employees to support its summary judgment

---

[2] Specifically, the assignment agreements produced by Adaptix (Gannon Decl., Exs. C, D) were signed months after the '315 and '808 patents were filed. Defendants assert the assignments do not support the proposition that the named inventors had an obligation to assign at the time of the invention. *See* 35 U.S.C. § 103(c). Adaptix disagrees, asserting the fact that the inventors later assigned the inventions to Broadstorm is consistent with Dr. Liu's testimony that since the beginning of their employment by Broadstorm, the inventors were under an obligation to assign their inventions to the company.

motion, and Dr. Liu's declaration as to the truth of provisions in any employment agreements is inadmissible hearsay.

Even assuming some of the inventors had an obligation to assign the inventions to Broadstorm, Defendants assert named inventor Dr. Hui Liu did not have an obligation to assign his rights to the same company (Broadstorm) as the other inventors. According to Defendants, upon coming into being, the invention was automatically assigned to Dr. Liu's employer, the University of Washington. Thus, even assuming Adaptix is correct that the other inventors had an obligation to assign to Broadstorm, Defendants submit there is no unity of invention, and § 103(c) does not apply.

**C.    Analysis**

Dr. Liu was employed by the University of Washington when he claimed inventorship of the '315 and '808 patents. Dr. Liu joined the University of Washington as an assistant professor in 1998, signing his employment agreement on August 3, 1998. (Employment Agreement at 47-48) (7/1/14 Liu Tr. at 74:7-11, 94:3-8). He was promoted to an associate professor in either 2001 or 2002, and he became a fully tenured professor at the same time. (7/1/14 Liu Tr. at 74:18-75:2).

The employment agreement required Dr. Liu to agree to the University's Patent, Invention, and Copyright Statement. (Employment Agreement at 49) (7/1/14 Liu Tr. at 94:24-95:9.) In pertinent part, this statement provides that the University "has a valid interest" in Dr. Liu's discovery or invention of patentable items. (Employment Agreement at 49). Further, Dr. Liu's employment agreement explicitly required him to disclose all discoveries and inventions to the University and assign all inventions to the University. (*Id.* at 48-49) ("I hereby [agree to disclose my inventions], and assign to the University all discoveries and inventions . . . .")).

Dr. Liu testified that he believed he did assign all inventions to the University of Washington in which it had an interest:

> Q. Did you understand that if you were doing research work for Washington using their facilities, that they would own the patents resulting from that work?
>
> A. Yes.
>
> * * *
>
> Q. Was it your -- although you didn't read this document, was it your understanding that you had assigned to the University all discoveries and inventions in which the University has an interest?
>
> A. Yes.

(7/1/14 Liu Tr. at 97:9-12; 98:14-18).

According to Defendants, Dr. Liu's employment agreement constitutes an "automatic" assignment that, upon conception, immediately assigned his inventions to the University of Washington with no further required action on his part. *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (holding agreement stating inventions "shall belong," and that employee "hereby conveys, transfers and assigns" to its employer, constitutes an automatic assignment); *see also SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1326 (Fed. Cir. 2010) (holding that the contractual language "employee assigns [his inventions]" has the effect of "expressly grant[ing] rights with no further action needed on the part of the employee[]").

Adaptix asserts Dr. Liu was on a partial leave of absence from the University of Washington at the time the inventions claimed in the '315 and '808 patents were made in October of 2000. According to Adaptix, in June of 2001, Dr. Liu requested a one-year unpaid extension of his leave of absence, to "help Broadstorm – a company developing 4G broadband wireless networks, complete

its first generation [sic] product." Dr. Liu stated he would continue supervising his graduate students during his leave. (Docket Entry # 313, Ex. 3). The University of Washington approved he extension of Dr. Liu's partial leave of absence for the 2001-2002 academic year. *Id*., Ex. 4

In June of 2002, Dr. Liu requested approval for part-time leave for Fall Quarter 2002, which would "serve as a transition from [his] current responsibilities at Broadstorm Telecom to full-time back at University of Washington, starting January 1, 2003." *Id*., Ex. 5. Dr. Liu's stated intent was to work 20 ours per week at the Electrical Engineering Department during he Fall Quarter (receiving 50% of his salary from the department) while also serving as a consultant for Broadstorm. *Id.*

The Chair of University of Washington's Department of Electrical Engineering, Professor Howard Chizeck, supported Dr. Liu's request, stating it would allow Dr. Liu "to gracefully be replaced at Broadstorm, while rebuilding his research activities at UW." *Id*., Ex. 6. Professor Chizeck stated there was a "strong possibility that Hui will become he wireless 'leader' at UW. . . ." He further recommended the University establish an oversight mechanism to insure that intellectual property generated by Dr. Liu at UW (or using UW resources) during the Autumn 2002 quarter be identified and segregated from "existing intellectual property that he developed at Broadstorm." *Id*.

The Associate Vice Provost of the University approved Dr. Liu's request for an extension of his partial leave and concurred that such an oversight mechanism should be established. *Id*., Ex. 7. Based on his conversations with Dr. Liu regarding questions raised regarding his possible consulting activity with Broadstorm, Professor Chizeck reported the following as his understanding of the issues:

    1. Before the beginning of the Fall 2002 quarter, Professor Liu will cease to be involved in new technology or product development for Broadstorm.

    2. During the Fall 2002 quarter he will provide advice to the company-particularly with regards to technology promotion, business development and fundraising activities.

    3. There will be no technology transfer between Broadstorm and UW, unless there is a specific mutual agreement to do so.

Given these clarifications, Professor Chizeck recommended approval of Dr. Liu's request "under the condition that all new intellectual property developed by Professor Hui Liu during the Fall 2002 quarter be considered to be UW intellectual property (unless specifically excluded by other agreements)." *Id.*, Ex. 8.

Five years later, in 2007, Dr. Liu requested he be granted a sabbatical for the academic year 2008-2009. *Id.*, Ex. 9. Dr. Liu sought to spend time at the Chinese Academy of Science and at Intel Communication Technology Lab, hoping "access to world-class R&D facilities [would] allow [him] to broaden [his] research activities beyond the academic boundary." *Id.* Dr. Liu's request was "enthusiastically" supported by Leung Tsang, the Chair of the Department of Electrical Engineering, who noted Dr. Liu had published more than forty journal articles, had sixteen awarded or pending patents; and had "pioneered the development of OFDMA-based mobile broadband access solution. . . ." *Id.*, Ex. 10.

According to Adaptix, Professor Tsang and the University of Washington, were aware of Dr. Liu's patents. At the time of Professor Tsang's letter, Dr. Liu was named on seven issued patents and fourteen pending patents, all of which Adaptix asserts are assigned to Adaptix (formerly Broadstorm). Two of the patents issued at that time were the '315 and '808 patents. According to Adaptix, although it was aware of Dr. Liu's patents and was also served with

8

subpoenas related to the Adaptix patents in this case and the prior *Clearwire* litigation (*see id.*, Ex. 15), the University of Washington has never made a claim of ownership in the '315 or '808 patent.[3] For these reasons, Adaptix argues Defendants have failed to show by clear and convincing evidence that the '315 patent is prior art.

As urged by Defendants, they do not have to prove the '315 patent is prior art by clear and convincing evidence at this stage of the litigation. Assuming Adaptix meets its initial burden of demonstrating no material dispute exists for trial, Defendants need only show that issues of material fact exist in order to defeat summary judgment.

To do this, Defendants assert Dr. Liu was an employee of the University of Washington while consulting for Broadstorm. Although Dr. Liu took a partial leave of absence from the university, Defendants submit Dr. Liu's employment agreement with the University of Washington was still effective during that time, and it covered inventions in which the university had an "interest." According to Defendants, Dr. Liu was paid by the university during this period and was expected to continue with his research duties. (7/1/14 Liu Tr. at 100:3-8; 102:8-12). Defendants take issue with Adaptix's assertion that the University of Washington had no interest in the Adaptix patents, stating Dr. Liu and others at the university were, at the time of the invention, researching and publishing on "precisely the technical topics described in the '808 Patent." (Docket Entry # 328 at 4).

Dr. Liu's employment agreement with the University of Washington provides as follows: "As a condition of my employment with the University of Washington, I hereby agree to disclose

---

[3] Adaptix asserts the University has made it clear that it holds no interest in the Adaptix patents, "via the letter from the OAG [in the *Clearwire* litigation] and its own conduct."

to the University all discoveries and inventions made while I am employed by the University, and **assign to the University all discoveries and inventions in which the University has an interest**." (Docket Entry # 302, Ex. 3)(emphasis added).

Adaptix is correct that the Federal Circuit has held contract language "agree to assign" reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests. *Bd. of Trustees of Stanford Univ. v. Roche molecular Systems, Inc.*, 583 F.3d 832, 841 (Fed.Cir.2009)(citing *IpVenture, Inc. v. Prostar Computer, Inc.,* 503 F.3d 1324, 1327 (Fed.Cir.2007) (interpreting "agree to assign" as "an agreement to assign," requiring a subsequent written instrument). However, the employment agreement at issue states "agree to disclose . . ., and assign. . . ." It does not state "agree to assign" as argued by Adaptix at the hearing. Viewing the evidence in the light most favorable to the nonmovants, Defendants have established there are disputed issues for trial regarding whether Dr. Liu's claimed inventions in the '315 and '808 patents were automatically assigned to the University of Washington by virtue of Dr. Liu's employment agreement with the University of Washington, and not to Broadstorm.

Accordingly, it is

**RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment that Pursuant to 35 U.S.C. § 103(c), United States Patent No. 7,072,315 is Not Prior Art to United States Patent No. 6,870,808 (Docket Entry #s 270, 171) be **DENIED.**

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of July, 2015.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE