**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ADAPTIX, INC. § | |
|     Plaintiff, § | CIVIL ACTION NO. 6:12-cv-00022 |
| v. § | *(Lead Case)* |
| § | |
| ALCATEL-LUCENT USA, INC. and § | |
| AT&T MOBILITY LLC, § | |
|     Defendants. § | |
| | |
| ADAPTIX, INC. § | |
|     Plaintiff, § | CIVIL ACTION NO. 6:12-cv-00369 |
| v. § | *(Lead Case)* |
| § | |
| T-MOBILE USA, INC., § | |
|     Defendants. § | |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE CRAVEN'S REPORT AND RECOMMENDATION REGARDING PARTIAL SUMMARY JUDGMENT THAT THE '315 PATENT WAS NOT PRIOR ART TO THE '808 PATENT IN SUIT**

Adaptix moved for partial summary judgment that the '315 patent was not prior art to the '808 patent in suit. The Report and Recommendation (R&R) (Dkt. 407)[1] recommends denying the motion (Dkt. 270) because there were disputed issues for trial regarding whether the claimed inventions in the '315 and '808 patents "were automatically assigned to the University of Washington ["UW"] by virtue of Dr. Liu's employment agreement with" UW.  R&R at 10.

Resolution of the "automatic assignment" issue need not await trial, however.  Whether the Liu employment agreement [the "Agreement"] creates an automatic assignment presents an issue of contract interpretation, which the Court can decide on the papers.[2]

---

[1] Unless otherwise noted, all references to the docket are in case no. 6:12-cv-22.

[2] The Court should also decide the "automatic assignment" issue before trial, because of the issue's paramount importance.  If the Court were to rule UW co-owns the patents in suit, the Court would have to dismiss the actions for lack of standing.

1

Standard of Review

This Court reviews *de novo* a party's challenge to the report and recommendation of a magistrate judge in a dispositive matter such as summary judgment pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.

Background

Broadstorm Telecommunications, Inc. ("Broadstorm"), predecessor to Adaptix, filed the application for the '808 patent on October 18, 2000, for an invention that four of its employees had conceived. Before that date, one of those employees, Hui Liu, had taken a partial leave of absence from his job as an assistant professor at the University of Washington, to develop the inventions for Broadstorm. *See* Dkt. Nos. 313-2; 313-3; 313-4; 313-5.

On August 3, 1998, Liu had signed the Agreement, which had the clause:

> As a condition of my employment with the University of Washington, **I hereby agree to** disclose to the University all discoveries and inventions made while I am employed by the University, and **assign to the University** all discoveries and inventions in which the University has an interest.

*See* Dkt. No. 302-5 (Emphasis added.) Since Liu was only on partial leave in 2000, Defendants argued that any invention Liu developed for Broadstorm in 2000 was "automatically" assigned to UW by the above provision of the 1998 Agreement.

The Issue is One of Contract Interpretation

Defendants' argument conflicts with *Bd. of Trustees of Stanford Univ. v. Roche Molecular Systems, Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009), which distinguished "I do hereby assign" from the slightly different "I agree to assign." "I hereby assign" effects a present assignment of future inventions, obviating any need for the inventor to execute a later assignment document. By contrast, "I hereby *agree to* assign," does not reflect an immediate

transfer of an expectant interest in the future invention, but rather a mere promise to transfer rights in the future. *Id*. In that latter situation, although the inventor is "required to assign" the invention, the assignment itself does not occur until the inventor, after developing the invention, executes a separate assignment document.

As illustrated by the emphasized portion of the above quotation, the Agreement reads "I hereby agree to … assign to the University," as in *Bd. Of Trustees*. Defendants, however, would elide "agree to," reading the Agreement as: "I hereby … assign to the University."

This conflict seemingly presents an issue of contract interpretation. As the construction of a license agreement is a question of law, *Cyrix Corp. v. Intel Corp.,* 77 F.3d 1381, 1384 (Fed.Cir.1996), the Court must decide the issue, and can do so here on summary judgment.

### The Court Should Adopt Adaptix's Interpretation of the Agreement

Reading "agree to" as modifying *both* "disclose" and "assign" ("I hereby agree to disclose … and [agree to] assign") comports with the natural parallel construction in the sentence. If, instead, the drafter had intended that "agree to" *not* modify "assign," the drafter would have signaled that intent by inserting "hereby" immediately before "assign," to create a different parallel construction ("I hereby agree to disclose…. and *hereby* assign").[3]

Adaptix's interpretation conforms to UW's Patent, Invention, and Copyright Policy (which the Agreement itself incorporated), which, at the time of the Agreement, read:

> As a condition of employment, … University employees *agree to assign* all inventions in which the University has an interest to the University …. *Employees shall execute documents of assignment* and do everything reasonably required to assist the assignee(s) in obtaining, protecting, and

---

[3] In this respect, Defendants themselves originally read the Agreement the same way Adaptix does, namely, as "requiring" Liu to assign: "Dr. Liu's employment agreement explicitly **required him to** disclose all discoveries and inventions to the University and **assign** all inventions to the University."(Def. Opp. at 4-5) (emphasis added). Defendants changed their position only after being confronted with *Bd. of Trustees* at the hearing on the motion. (The Agreement, however, did not require that Liu assign "all" inventions, but only those in which "the University has an interest.")

> maintaining patent or other proprietary rights. … The University has no vested interest in inventions conceived and developed by employees entirely on their own time and without the use of University facilities. To clarify the inventor's title to such invention …, all inventions during employment with the University shall be reported to the University's office of technology transfer for determination of the degree of University interest.

UW University Handbook, Chapter 7, Section 1.C. (See attached McGonagle Decl., Ex. 1) (emphasis added). By contrast, Defendant's interpretation contradicts the UW policy, because that interpretation would read out the "agree to" language, as well as read out "execute documents of assignment."

Defendants' interpretation would also conflict with the stated intent of the UW policy, to clarify the inventor's title by having the inventor disclose all inventions and then having the University determine the degree of its interest, before deciding whether to request the employee to execute documents of assignment. Under Defendants' supposed automatic assignment of those inventions in which UW has an interest, there would be no clarification of title because no one would know which inventions had actually been assigned until a court later determines, in retrospect, in which inventions UW had an interest.

### Under Adaptix's Interpretation, UW Cannot Be a Co-Owner

Written assignments from Liu to Broadstorm were recorded with the Patent Office. An assignment recorded with the Patent Office creates a presumption that places the burden to rebut ownership on the one challenging the assignment:

> The recording of an assignment with the PTO … creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment.

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F. 3d 1319, 1327-28 (Fed. Cir. 2010). Other than relying on the Agreement itself, which, as discussed above, does not itself assign an invention,

Defendants offer no evidence that Liu ever executed an assignment to UW. Thus, under Adaptix's interpretation, where the Agreement did not automatically assign the inventions, UW cannot be a co-owner of the patents in suit.[4]

### The Other Inventors' Obligation to Assign

The R & R did not reach a conclusion as to whether the three other inventors had an obligation to assign to Broadstorm. All were employed at Broadstorm on and before the filing dates of the patents; all executed assignments, albeit after the filing dates. Liu testified that all had an obligation to assign their inventions to Broadstorm.

Defendants offered no evidence to counter Liu's testimony, arguing only that "Liu's declaration as to the truth of provisions in any employment agreements is inadmissible hearsay." R & R at 5. But terms of a contract are considered verbal acts, and thus not hearsay, because the words themselves have legal significance. *See Kepner-Tregoe Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994):

> A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it. Under the objective theory of contracts, the fact that two parties signed a contract is enough to create legal rights, whatever the signatories might have been thinking when they signed it. The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection.

In any event, since the hearing Adaptix has located invention assignment agreements signed by each of the four inventors. (McGonagle Decl., Exs. 2, 3, 4, and 5)

---

[4] If, instead, the Court were to construe the Agreement as an automatic assignment, that construction would not resolve the ownership issue in Defendants' favor. Under that construction, the only inventions automatically assigned would be those in which "the University has an interest." Which inventions those are would be for the Court to decide at a bench trial. *DDB Technologies v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290-92 (Fed. Cir. 2008) (court decides disputed jurisdictional facts relative to standing). In that connection, the Court would consider evidence that UW, although knowing of the patents, has never claimed having an interest in them or the underlying inventions. Adaptix would submit evidence that UW knew of Liu's work at Broadstorm and understood that his inventions conceived at Broadstorm were not owned by UW. Further, in response to a subpoena to UW, the office of the Attorney General of the State of Washington has stated that "Prof. Liu's records related to the subject patents of your subpoena were created outside the scope of Prof. Liu's employment and therefore are not University documents." Dkt. No. 313-7.

### Whether the '315 Patent Is an Invention "by Another"

As the Motion stated (Mot. at 1), the only provision of the patent statutes under which the '315 patent could qualify as prior art would be the former[5] 35 U.S.C. §102(e), which gives prior art status to other patents the applications for which were filed "by another" before the invention of the patent in suit. To be prior art under that statute, the earlier filed patent must thus be the invention of "another."

As explained in footnote 3 of the Motion, the '808 patent was filed by four Broadstorm inventors: Liu, Li, Mu, and Yin; and the '315 patent was filed by three of those four: Liu, Li, and Mu. Because the earlier patent was filed by a subset of the inventors of the patent in suit, the disclosure of the '315 patent cannot be the work of "another." *See Riverwood Int'l Corp. v. R.A. Jones & Co, Inc.*, 324 F.3d 1346, 1356 (Fed.Cir. 2003).

But, as the Motion was expressly based on other grounds and directed to the use of the '315 patent for obviousness purposes, Adaptix will not discuss that issue further here. Adaptix mentions it now only to advise the Court that Adaptix will object at trial to the introduction of the '315 patent as prior art for any purpose because it was not the work "of another."

Dated: July 31, 2015               /s/ *Paul J. Hayes*
                                                          Paul J. Hayes
                                                          Kevin Gannon
                                                          **HAYES MESSINA GILMAN & HAYES LLC**
                                                          200 State Street, 6th Floor
                                                          Boston, MA 02109
                                                          Tel: (617) 345-6900
                                                          Fax: (617) 443-1999
                                                          Email: phayes@hayesmessina.com
                                                          Email: kgannon@hayesmessina.com

---

[5] The statute was amended, as of March 16, 2013, by the AIA, but the previous version controls these pre-AIA patents.

                    Craig Tadlock
                    Texas State Bar No. 00791766
                    **TADLOCK LAW FIRM PLLC**
                    2701 Dallas Parkway, Suite 360
                    Plano, TX 75093
                    Tel: (903) 730-6789
                    Email: craig@tadlocklawfirm.com

**ATTORNEYS FOR ADAPTIX, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 31st day of July 2015.

                    */s/ Daniel J. McGonagle*
                    Daniel J. McGonagle