# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## TYLER DIVISION

| | | |
|---|---|---|
| ADAPTIX, INC., | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 6:12-CV-22-RWS-CMC |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| ALCATEL-LUCENT USA, INC., *et al.*, | § | |
| | § | (LEAD CASE) |
| *Defendants.* | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW THAT THE ASSERTED CLAIMS ARE NOT INVALID OR, ALTERNATIVELY, MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(a)

## I.     INTRODUCTION

Plaintiff Adaptix, Inc. ("Adaptix") files this reply in support of its Motion for Judgment as a Matter of Law that the Asserted Claims Are Not Invalid. *See* Dkt. No. 636. In their Response to Adaptix's Motion (Dkt. No. 643), Defendants mischaracterize Adaptix's arguments and the evidence presented at trial. Additionally, they argue that Adaptix waived its right to file its motion, despite the fact that it timely moved for judgment as a matter of law. Finally, Defendants incorporate by reference the arguments made in their Response (Dkt. No. 642) to Adaptix's Motion for Judgment as a Matter of Law that the Asserted Claims are Infringed (Dkt. No. 637) regarding Adaptix's request for a new trial. In those arguments, Defendants suggest that Adaptix is somehow foreclosed from moving for a new trial on issues for which it preserved error. In this Reply, Adaptix relies for the most part on the arguments and evidence presented in its original Motion. However, Adaptix replies to a few discrete points from Defendants' Response to point out mischaracterizations and factual inaccuracies. In further support of its Motion for Judgment as a Matter of Law, Adaptix respectfully shows the Court as follows:

## II.     ARGUMENTS

### A.     The Defendants Mischaracterize Adaptix's Arguments on Written Description

Defendants mischaracterize Adaptix's arguments on written description, claiming that Adaptix argued in its Motion that "the claims do not cover MIMO." *See* Dkt. No. 643 at 3. That was not what Adaptix argued in its Motion. Rather, as Adaptix pointed out, Defendants' written-description argument was fundamentally flawed because it ignored the claim language and focused on the alleged absence of written description of words that do not appear in the claims. *See* Dkt. No. 636 at 8 ("Defendants invited the jury to come to an incorrect decision regarding the alleged lack of written description by implying that the lack of explicit disclosure of the

terms MIMO and spatial multiplexing (which are not in the claim language) in the '808 Patent's specification rendered the asserted **claim language** defective.") (emphasis in original).

As Adaptix pointed out, Defendants created a running dialog with various witnesses, repeatedly asking them to confirm that the '808 Patent's specification does not use the terms MIMO, FSS, spectral efficiency, and others. *See, e.g.*, 12/10/2015 A.M. Trial Tr. at 39:11–16 ("Well, don't you think that if this patent was about spectral efficiency – excuse me – spectral efficiency, that the inventors would have written that term 'spectral efficiency' in the patent back in 2000 when they were telling the world what their invention was?"), 39:17–22 ("FSS, you heard about that, frequency selective scheduling. You heard counsel talk about that several times. That's not in the patent. It doesn't say FSS in the patent. You heard about MIMO. It doesn't say MIMO in the patent."); 12/11/2015 A.M. Trial Tr. at 13:21–25 ("So – but your patent, the '808 patent, doesn't refer to multi – it doesn't say multi-antenna MIMO in there, right?"), 17:20–22 ("Okay. So back then you didn't mention multi-antenna MIMO, right?"), 172:4–13 ("Right. And you agree that the term 'MIMO' never appears in the '808 patent, right?"), 175:9–11 ("And you agree with me that the '808 patent never uses the term 'FSS' or 'frequency selective scheduling' either, right?"), 175:15–16 ("The '808 patent never uses the term 'FSS,' right, 'frequency selective scheduling'?"); 12/15/2015 P.M. Trial Tr. at 35:10–12 ("Okay. So in the '808 patent, there is – do you think there's a disclosure of MIMO?"), 142:3–6 ("The acronym MIMO, does that ever appear in the '808 patent anywhere?"), 142:12–15 ("And same question with respect to FSS. There's no acronym FSS that appears in the '808 patent either, is there?"); 12/16/2015 A.M. Trial Tr. at 23:3 ("Does the acronym 'MIMO' appear in the '808 patent?"), 23:5–6 ("Does the phrase 'multiple-in multiple-out' appear in the '808 patent?"); 12/17/2015 Trial Tr. at 66:21–25 ("Now, we all know, even though MIMO is not mentioned anywhere in the patent, and Dr.

Liu agreed with that when I asked him, and Dr. Wells agreed with that as well, yet here, when we're in this case, what do we hear? The patent's about MIMO. The patent's about FSS."). Not a single one of those terms—MIMO, FSS, multi-antenna MIMO, spectral efficiency—appears in the claim language of the Asserted Claims. Yet Defendants' entire written description argument focused on the alleged lack of disclosure of these terms.

Defendants' attempts to argue lack of written description based on Adaptix's infringement allegations were improper, as has been recognized by other courts. For example, in *REC Software USA, Inc. v. Bamboo Solutions Corp.*, Microsoft (whose software was accused of infringement) argued that the patent at issue was invalid based on lack of written description. *See* Case No. C11-0554JLR, 2012 U.S. Dist. LEXIS 124609, at **3 (W.D. Wash. Aug. 31, 2012). Microsoft's argument was that the patent holder's *application* of the claims in its infringement assertions was beyond the scope of the specification. *Id.* at **32–33. The court properly rejected Microsoft's argument, noting that Microsoft's complaint related "to the propriety of the court's *Markman* construction and indirectly to whether the [patent holder's] infringement theory is beyond the scope of that construction." *Id.* at **33–34. The court went on to state that it "fail[ed] to understand how Microsoft's argument supports its contention that the claims are unsupported by the specification in the eyes of a person of ordinary skill in the art." *Id.* at **34.

**B.**     **There is No Anticipation Because FDMA and OFDMA are Not the Same**

Defendants claim that judgment as a matter of law on anticipation is unwarranted because Dr. Acampora testified that FDMA and OFDMA are the same. *See* Dkt. No. 643 at 7. But conclusory expert testimony does not qualify as substantial evidence. *See, e.g.*, *Iovate Health Sci., Inc. v. Vio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1381–82 (Fed. Cir. 2009) (applying Fifth Circuit Law). Similarly, "when an expert opinion is not supported by

sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). Simply put, just because an expert takes a position does not mean that it is supported by substantial evidence—especially when it is factually incorrect.

The fact is—and the trial record supports the position that—FDMA and OFDMA are *not* the same. The Barratt reference itself describes its system as a "conventional frequency division multiple access [FDMA] system." *See, e.g.*, DX-238 at 7:5–17, 7:43–49; *see also* 12/16/2015 P.M. Trial Tr. at 129:15–19. In FDMA, the spectrum is divided into frequency channels and allocated to users based on availability of channel, without regard to channel quality or the fact that various parts of the overall channel may be different (*i.e.*, have different areas of signal strength and quality) for different users. As Dr. Wells explained, conventional FDMA systems (like Barratt) used multiple frequency-based traffic channels and required guard bands inserted between channels to avoid interference:



**Wells Trial Demonstrative – 12/11/2015 A.M. (Slide 6)**

Dr. Wells likened this aspect of FDMA to tuning a car radio, where each station may come in clearly on a particular frequency with static (*i.e.*, guard bands) intentionally placed between channels. *See, e.g.*, 12/15/2015 A.M. Trial Tr. at 74:2–75:21. Dr. Acampora also admitted that frequency channels are separated by guard bands in FDMA—a characteristic that distinguishes them from OFDMA both in terms of function and efficiency. *See* 12/15/2015 P.M. Trial Tr. at 82:14–85:4.

OFDMA, on the other hand, involves sending data over a large number of frequency subcarriers in such a way that they are mathematically orthogonal to one another (which increases spectral efficiency). Moreover, different OFDMA subcarriers may be assigned to different users so that users can share the transmission bandwidth. *See, e.g.*, 12/15/2015 A.M. Trial Tr. at 76:17–78:19. Dr. Wells illustrated this point, as well:



**Wells Trial Demonstrative – 12/11/2015 A.M. (Slide 7)**

Frequency-selective scheduling ("FSS") recognizes that in a wideband transmission system, the channel conditions of a radio link will vary over both time and over a transmission bandwidth. Channel allocation in an OFDMA system using FSS can therefore take into

consideration the optimal distribution of channel resources at any given time based on signal quality and interference as received by individual users. *See* 12/15/2015 A.M. Trial Tr. at 87:24–91:10 (discussing FSS and the system's attempts "to allocate those frequencies to optimize the particular users [it is] looking at, the characteristics of each of the users"; "So frequency selective scheduling is basically the handset saying this is the sweet spot of the spectrum for me and the base stations recognizing that and trying to allocate to the sweet spot of each user."). This distinguishes OFDMA from FDMA, where users are allocated channels one at a time based on availability.

Defendants also claim that "even the named inventor, Dr. Liu, testified that [FDMA and OFDMA] are similar." *See* Dkt. No. 643 at 10. This point is irrelevant. Anticipation requires that a single prior art reference disclose each and every element of an asserted claim. *See, e.g.*, *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208, F.3d 989, 994–95 (Fed. Cir. 2000); *see also Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999). A general assertion of "similarity" falls well short of the high bar required to prove anticipation.

Finally, as Adaptix argued in its Motion, Dr. Acampora never even argued—much less provided clear and convincing evidence—that the elements that were allegedly disclosed in Barratt were arranged as in the Asserted Claims. *See, e.g.*, 12/15/2015 A.M. Trial Tr. at 122:25–123:7 (describing process for determining anticipation); *but cf. Net MoneyIN v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008). Defendants do not even address this point in their Response.

C.    **The Asserted Obviousness Combinations Do Not Teach the Claimed Invention**

Defendants claim that Adaptix "constructs a strawman argument" by pointing out that neither Van Nee nor Paulraj teaches "traffic channel allocation using broadband spatial signature

vectors." However, Adaptix's argument is relevant, because traffic channel allocation using broadband spatial signature vectors was one of the elements that Barratt lacks. *See* Dkt. No. 636 at 12. Thus, Adaptix's arguments with respect to Van Nee and Paulraj were two-fold. First, a person of ordinary skill in the art would not seek to combine either reference with Barratt because doing so would render Barratt inoperable for its intended purpose. *See* Dkt. No. 636 at 13–14 ("Barratt's single-channel FDMA approach would have to be altered substantially to make it compatible with Van Nee's multi-channel OFDMA approach for purposes of combination."), 14–15 ("[L]ike the Barratt-Van Nee combination, one could not combine Barratt and Paulraj without changing the intended purpose of each. . . . To combine these references, one would either have to ignore what Paulraj teaches about how to pick channels (*i.e.*, based on availability) or ignore what Barratt says about using a single channel FDMA approach.") (citing *In re Ratti*, 270 F.2d 810, 813 (C.C.P.A. 1959). The basis for this argument was the settled principle that where a proposed modification to prior art would render it unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification. *See, e.g.*, *In re Gordon*, 733 F.2d 900 (Fed. Cir. 1984). Similarly, if a proposed modification or combination of the prior art would change the principle of operation of the prior art invention, then the teachings of the references are not sufficient to establish a *prima facie* case of obviousness. *In re Ratti*, 270 F.2d at 813.

Second, Adaptix argued that even if a person of ordinary skill in the art would have thought to combine Barratt with Van Nee or Paulraj, the alleged combination would still not disclose all the elements. This is not a strawman argument; it is a statement of fact regarding the lack of disclosure in the prior art references at issue.

### III. ADAPTIX DID NOT WAIVE ITS RIGHT TO FILE ITS MOTION

Defendants argue that "Adaptix waived its right to file a renewed JMOL motion under Rule 50(b) by failing to timely move for JMOL under Rule 50(a)." *See* Dkt. No. 643 at 17. Defendants are incorrect. Adaptix made a timely oral motion under Rule 50(a) after the close of evidence and before the case was submitted to the jury. *See* 12/17/2015 Trial Tr. at 8:9–14. Adaptix explicitly referenced anticipation, obviousness, and written description. *See id.* Moreover, the parties had just completed a discussion about these very issues, wherein Adaptix set forth an overview of its arguments—consistent with what it filed in its written motion and what appeared in its Rule 50(b) Motion. *See, e.g.*, 12/17/2015 Trial Tr. at 6:10–15 (stating that Barratt does not disclose OFDMA), 6:16–25 (arguing that the patent discloses spatial multiplexing, which Defendants' experts testified was synonymous with MIMO).

Defendants take an overly narrow view of Rule 50. "Where an issue is not unique to patent law, [the Federal Circuit] appl[ies] the law of the regional circuit from which the case arises." *Allergan Inc. v. Athena Cosmetics Inc.*, 738 F.3d 1350, 1354 (Fed. Cir. 2013). Here, Fifth Circuit law governs procedural issues related to Rule 50 Motions. Courts in the Fifth Circuit "liberally" construe Rule 50(b)'s requirements, "such that the adequacy of an oral Rule 50(a) motion depends in large measure on the context in which the motion is made." *See Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973 (Fed. Cir. 2010) (citing *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1379–80 (Fed. Cir. 2009)). As the Court in *Orion* stated:

> Even a cursory motion for judgment may be sufficient where it was made "shortly after an extended discussion of the evidence relating to anticipation and obviousness, and it is clear from the context that neither the court nor [the nonmovant's attorneys] needed any more enlightenment about [the movant's] position on those issues."

*Id.* (quoting *Blackboard*, 574 F.3d at 1380).

Here, Adaptix's oral motion referenced the issues and put Defendants on notice of

Adaptix's position with respect to the invalidity arguments. Additionally, the Court denied the

parties' motions without requesting further argument:

> MR. NELSON: If there's anything that Your Honor would be interested in
> hearing –
> THE COURT: No.
> MR. NELSON: -- more detail, we would be happy –
> THE COURT: No. Thank you – that you, Mr. Nelson, Mr. Swedlow, and Mr.
> Hayes, for your arguments.

12/17/2015 Trial Tr. at 7:9–14.

Defendants complain about the sufficiency of Adaptix's discussion of the issues in its

oral motion, Dkt. No. 643 at 20–21. But Adaptix's discussion of the invalidity issues was more

specific than Defendants' was:

> MR. SWEDLOW: Okay. With respect to invalidity, the '808 patent is invalid
> specifically because it's anticipated by Barratt. And it's also – we believe it's
> established as invalid as – in light of Barratt, in combination with both – with van
> Nee and in a separate combination with Paulraj and also invalid for lack of written
> description, because the way that the claim has been interpreted, it is – the – the
> accused – the way the claim has been interpreted, it fails to meet the requirement
> of written description.

*See* 12/17/2015 Trial Tr. at 4:22–5:5. Defendants' claims that Adaptix's discussion of Barratt's

lack of OFDMA and the disclosure of spatial multiplexing in the patent are insufficient are

belied by their own conclusory oral Rule 50 Motion on invalidity.

Finally, in response to Defendants' claims that Adaptix's Motion is untimely because it

was filed on December 17th, Adaptix notes: (1) that a written motion is not required; and (2) that

the Court was aware that Adaptix was *planning* to brief the issues:

> MR. HAYES: Your Honor, so when you say that, I mean, we didn't put on the
> record what we had to say. But, I mean, it's going to be the same result. You
> know, we say that on our motion.
>
> We have a motion – a JMOL motion on anticipation; namely, there's not
> sufficient evidence to determine anticipation, there's not specific evidence to
> determine obviousness, and there's not specific – or adequate evidence on 112,
> written description. **And we'll – we'll brief that**. Same thing with damages.

*See* 12/17/2015 Trial Tr. at 8:9–14 (emphasis added). Adaptix's Motion was not untimely.

## IV.    MOTION FOR NEW TRIAL

Defendants repeatedly suggest that Adaptix is legally foreclosed from being granted a new trial on issues that it raised at trial and that the Court ruled on. *See, e.g.*, Dkt. No. 642 at 16 ("these issues were already considered and rejected by the Court"), 17 ("the Court . . . considered, but ultimately rejected, the need for a curative instruction"), 20 ("This argument has no merit because the Court considered the issue of any potential prejudice at length during trial."). But Adaptix's attempts to preserve error by objecting at trial do not shut the door on its ability to obtain a new trial on those same issues. Indeed, if Adaptix had not obtained a ruling on the issues raised in its Rule 59 Motion, Defendants likely would be arguing that it failed to preserve error and had therefore waived its right to a new trial. Defendants are wrong on the law. Addressing one point in particular, Defendants mischaracterize the statements made at the bench conference during the dispute about Dr. Cimini's testimony. Defendants claim that the Court ruled that "going forward," Defendants should not mention that Dr. Cimini was an expert hired by Adaptix. *See* Dkt. No. 642 at 20. The Court never said anything about a "going forward" instruction, and it is unclear whether the Court was aware that Defendants had already informed the jury that Dr. Cimini was an Adaptix expert. Additionally, Adaptix objected to the use of Dr. Cimini's testimony in part on the grounds that he was not timely disclosed—another objection that was overruled. *See* 12/14/2015 A.M. Trial Tr. at 4:18–5:6; 12/15/2015 P.M. Trial Tr. at 41:18–21.

## V.    CONCLUSION

For the foregoing reasons and those stated in its original Motion, Adaptix respectfully requests that its Motion be granted.

Respectfully submitted,

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
Shawn A. Latchford
Texas State Bar No. 24066603
sal@emafirm.com
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397

Edward K. Chin
Texas State Bar No. 50511688
ekc@emafirm.com
Anthony K. Bruster, Of Counsel
Texas State Bar No. 24036280
akb@emafirm.com
Andrew J. Wright, Of Counsel
Texas State Bar No. 24063927
ajw@emafirm.com
**ALBRITTON LAW FIRM**
1330 North White Chapel Blvd. Suite 100
Southlake, Texas 76092
Telephone:  (817) 251-0610
Facsimile:  (903) 758-7397

Edward R. Nelson, III
ed@nelbum.com
Texas State Bar No. 00797142
Brent N. Bumgardner
brent@nelbum.com
Texas State Bar No. 00795272
Barry J. Bumgardner
barry@nelbum.com
Texas State Bar No. 00793424
Meredith Fitzpatrick
meredithf@nelbum.com
Texas State Bar No. 24059753

**NELSON BUMGARDNER ,P.C.**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Telephone: (817) 377-9111
Facsimile: (817) 377-3485

*Counsel for Adaptix, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 15th day of February, 2016.

ALBRITTON LAW FIRM